[No. 12137-2-III.   Division Three.   November 16, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. ESTABAN R. TERAN, *Appellant.*

*George P. Trejo* and *Contreras-Trejo & Trejo, Inc. P.S.*, for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Kenneth L. Ramm, Deputy,* for respondent.

SWEENEY, A.C.J. — Estaban Teran appeals his conviction of possession of a controlled substance, cocaine, with intent to deliver. RCW 69.50.401(a). He contends the court erred in ruling he made a knowing and intelligent waiver of his *Miranda*[1] rights. We affirm.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

## Factual Background

On March 12, 1991, Yakima police officers executed a search warrant at Mr. Teran's home and recovered a brick of cocaine weighing 96.2 grams, several plastic baggies containing cocaine, drug paraphernalia, and $3,353 cash. James Robinson, special agent for the United States Immigration and Naturalization Service, assisted in the search.

As Agent Robinson entered the residence, officers were advising Mr. Teran of his *Miranda* warnings using a Spanish cassette tape. In the presence of the three officers, Agent Robinson gave Mr. Teran the *Miranda* warnings in Spanish and asked him if he understood the warnings. Mr. Teran answered coherently, with appropriate responses, in Spanish and in English. He agreed to answer Agent Robinson's questions and stated that he had obtained the cocaine at the park and was going to pay for it after he sold it.

Mr. Teran was charged with possession of cocaine with intent to deliver. At a CrR 3.5 hearing, the court interpreter, who had prepared the Spanish *Miranda* tape, testified that the tape uses the word "proporcionar" rather than "dar", the more common Spanish word for "to give or supply". She said that "proporcionar" is a formal manner of speech, used by educated persons; she has not heard the word "proporcionar" used.

Agent Robinson acknowledged that "proporcionar" is a complex word, but stated that it was his habit to ask an accused if he or she needed an explanation. He testified that he has "often been told that they don't understand, at which time [he] explain[s] it in more everyday language." Agent Robinson testified that Mr. Teran acknowledged that he understood the warnings and agreed to answer questions.

Mr. Teran testified that he had only a third grade education and came to the United States from Mexico in 1979. He said that he did not hear the cassette tape the officers played because he was in another room. Mr. Teran testified that the officers did not ask him if he understood the tape. He also stated that Agent Robinson did not inform him that he had a right to an attorney free of charge and did not explain the

other *Miranda* warnings. Mr. Teran said that Agent Robinson did not correctly interpret his responses.

The court found that Mr. Teran was present when the cassette tape was played in its entirety but was not asked if he understood his rights after the tape was played. The court concluded that Mr. Teran's statements would only be admissible if Mr. Teran had voluntarily waived his rights after the *Miranda* warnings were read to him by Agent Robinson. The court found that Agent Robinson read Mr. Teran his rights from a card he carried and had asked Mr. Teran if he understood each warning. Mr. Teran indicated he understood each right. The court denied the motion to suppress and a jury convicted Mr. Teran of possession of cocaine with intent to deliver. This appeal follows.[2]

The dispositive issue is whether the trial court erred in finding that Mr. Teran had knowingly and intelligently waived his rights. Mr. Teran argues that he did not understand the warnings because of the use of a complex word, "proporcionar".

### DISCUSSION

■■ Standard of Review. On review of a suppression motion, we make an independent evaluation of the evidence, allowing "great significance" to the findings, and deference to credibility issues. *State v. Mennegar*, 114 Wn.2d 304, 309-10, 787 P.2d 1347 (1990); *State v. Hill*, 68 Wn. App. 300, 304, 842 P.2d 996, *review denied*, 121 Wn.2d 1020 (1993). We determine whether substantial evidence supports the findings of the trial court and whether those findings support the conclusions of law. *State v. Hagen*, 55 Wn. App. 494, 498, 781 P.2d 892 (1989). The court's findings will not be disturbed on appeal if supported by substantial evidence. *State v. Hashman*, 46 Wn. App. 211, 217, 729 P.2d 651 (1986), *review denied*, 108 Wn.2d 1021 (1987).

■ Knowing and Intelligent Waiver. A suspect who has been advised of his *Miranda* rights against self-incrimina-

---

[2]At the suppression hearing, Mr. Teran argued that the warnings were defective because he was not specifically informed that an attorney would be provided to him "free of charge". He does not argue that position on appeal.

tion may waive the rights, provided the waiver is made knowingly and intelligently. *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). The State must establish that the defendant was fully advised of his rights, understood them, and knowingly and intelligently waived them. *State v. Terrovona*, 105 Wn.2d 632, 646, 716 P.2d 295 (1986); *State v. Reuben*, 62 Wn. App. 620, 625, 814 P.2d 1177, *review denied*, 118 Wn.2d 1006 (1991).

▪ Whether a confession is voluntary and therefore admissible is determined by examining the totality of the circumstances. *State v. Wolfer*, 39 Wn. App. 287, 290, 693 P.2d 154 (1984), *review denied*, 103 Wn.2d 1028 (1985) (citing *Davis v. North Carolina*, 384 U.S. 737, 741-42, 16 L. Ed. 2d 895, 86 S. Ct. 1761 (1966)). "The test is if the defendant's will to resist was so overborne as to bring about a confession not freely self-determined." *Wolfer*, at 290. Because of the constitutional rights at issue, a reviewing court makes an independent evaluation of the evidence. *Mennegar*, at 309-10; *State v. Flowers*, 57 Wn. App. 636, 641, 789 P.2d 333, *review denied*, 115 Wn.2d 1009 (1990).

▪ A valid waiver may be either expressly made or implied when the record reveals that the "defendant understood his rights and volunteered information after reaching such understanding." *Terrovona*, at 646. A waiver may be inferred when "the record shows that a defendant's answers were freely and voluntarily made without duress, promise or threat and with a full understanding of his constitutional rights." *Terrovona*, at 646-47.

▪ Waiver Inhibited by Language Barriers. Although a suspect's ability to make a knowing and intelligent waiver of his *Miranda* rights may be inhibited by language barriers, a valid waiver may be effected when a defendant is advised of his *Miranda* rights in his native tongue and claims to understand such rights. Further, the translation of *Miranda* from English to Spanish need not be perfect — it is sufficient that the defendant "understands that he does not need to speak to police and that any statement he makes may be used

against him." *United States v. Hernandez*, 913 F.2d 1506, 1510 (10th Cir. 1990), *cert. denied*, 499 U.S. 908 (1991).

Here, the court found that "Agent Robinson went through and read each individual right to the defendant and based on habit asked after each one if the defendant understood." The court also found that "[t]he defendant indicated he did understand each one of the individual rights." Agent Robinson testified that Mr. Teran indicated that he understood the *Miranda* rights he had been read. Three other officers were present during the exchange. Using coherent speech, Mr. Teran responded to the officers in Spanish and sometimes in English. He indicated that he understood the officers and did not demonstrate any confusion with the word "proporcionar". His statement was not the result of coercion. The court's findings are supported by substantial evidence. The court did not err in ruling that Mr. Teran knowingly and intelligently waived his rights.

The conviction is affirmed.

MUNSON, J., and CLARKE, J. Pro Tem., concur.

Review denied at 123 Wn.2d 1021 (1994).