|No. 33731-9-I.   Division One.   June 5, 1995.|

THE STATE OF WASHINGTON, *Respondent*, v. RYAN
BLUMENTHAL, *Petitioner*.

*Bruce Brown*, for petitioner.

*Norm Maleng, Prosecuting Attorney*, and *Roger Rogoff, Deputy*, for respondent.

AGID, J. — Ryan Blumenthal appeals his conviction for possession of marijuana. He argues that the District Court should have granted his motion to suppress evidence gathered from a search of his car following a traffic stop because the stop was pretextual. We conclude that the stop was not pretextual because a reasonable officer would have stopped the car under these circumstances and affirm.

## FACTS

On April 9, 1992, Bellevue City Police Officer Frank Nunnelee was on patrol in his squad car. His patrol duties included cruising through hotel parking lots and park and ride areas looking for car prowlers. That night, Nunnelee drove into the parking lot of the Embassy Suites Hotel near 158th S.E. and S.E. Eastgate Way. Nunnelee passed a white Toyota in the parking lot. His suspicions were aroused when he noticed that both the driver and the passenger were glancing at him and that they appeared too young to be patrons of the hotel.

He turned around to follow the car as it exited the parking lot and turned south on 158th. Once on 158th, the car got into the left turn lane and stopped for a red light. The distance from the parking lot exit to the left turn lane is approximately one-eighth of a block. When the light turned green, the car turned left onto Eastgate Way. The driver did not signal before he turned. Based on this traffic infraction, Nunnelee stopped the car.

Nunnelee walked up to the car and spoke with the driver, Blumenthal. He explained that he had pulled him over because Blumenthal failed to signal before turning

and asked what they were doing in the hotel parking lot. Blumenthal stated he had pulled over because the car's engine was overheating. As he was speaking with Blumenthal, Nunnelee noticed the smell of burnt marijuana.[1] At that point, he asked both Blumenthal and his passenger for identification, returned to his patrol car and ran a records check on both of them. The records check revealed that the passenger, Reed Hurst, had an outstanding misdemeanor warrant. Nunnelee returned to the car, arrested Hurst and put him in the back of the patrol car. He then asked Blumenthal to step out of the car and searched it. Nunnelee recovered a metal pipe which smelled of burnt marijuana and contained marijuana residue, a cigarette rolling machine, rolling papers, a container with marijuana residue in it and a glass marijuana bong. Nunnelee read Blumenthal his rights and placed him under arrest.

The State charged Blumenthal with misdemeanor possession of marijuana in violation of RCW 69.50.401 and possession of drug paraphernalia in violation of RCW 69.50.412.[2] Blumenthal moved pretrial to suppress the evidence obtained during the search. The District Court ruled that the odor of marijuana was a sufficient justification for Nunnelee's request for identification from both the passenger and the driver. The court further ruled that, once Hurst's warrant was revealed, Nunnelee was justified in arresting him on the warrant and searching the car incident to his arrest. The trial court denied Blumenthal's motion on this basis. Blumenthal agreed to a stipulated trial, and the District Court found him guilty as charged.

Blumenthal appealed the District Court's ruling, arguing that the traffic stop was an unlawful pretext stop under the Washington Constitution. The Superior Court

---

[1] Nunnelee had been a police officer for almost 12 years and had been involved in hundreds of narcotics related arrests. At the suppression hearing, the defense stipulated that Nunnelee is an expert in the recognition of marijuana.

[2] Blumenthal challenged both charges in the District Court. The possession of paraphernalia conviction was not included in the appellate record, however. Because the possession of paraphernalia conviction was not before the Superior Court, we do not consider it here.

ruled that the stop was valid and affirmed. Blumenthal petitioned for discretionary review, which we granted to clarify the scope of the protection article I, section 7 of the state constitution affords from pretextual traffic stops.

## DISCUSSION

The only issue before us is whether the pretext rule should be interpreted more broadly under article I, section 7 of the state constitution than under the Fourth Amendment. Under the pretext rule, a traffic stop may not be used as a pretext to search for evidence. *United States v. Lefkowitz*, 285 U.S. 452, 76 L. Ed. 877, 52 S. Ct. 420, 82 A.L.R. 775 (1932); *State v. Michaels*, 60 Wn.2d 638, 644, 374 P.2d 989 (1962). "A pretextual stop constitutes an unreasonable seizure that violates the Fourth Amendment and, therefore, renders what would otherwise be a lawful search an unconstitutional one". *State v. Chapin*, 75 Wn. App. 460, 464-65, 879 P.2d 300 (1994), *review denied*, 125 Wn.2d 1024 (1995).

Blumenthal agrees that Nunnelee's actions were otherwise lawful. He had a legal justification for the initial traffic stop based on Blumenthal's failure to signal before making a left turn. Under RCW 46.61.021(3), he had authority to request Blumenthal's identification as part of his investigation of the traffic infraction. Once Nunnelee detected the odor of marijuana, he also had a basis for requesting Hurst's identification. *See State v. Huff*, 64 Wn. App. 641, 647, 826 P.2d 698 ("probable cause to arrest the occupants of a car for possession of a controlled substance exists when a trained officer detects that the odor of a controlled substance is emanating from a vehicle"), *review denied*, 119 Wn.2d 1007 (1992). After Nunnelee ran the warrant check and discovered Hurst's outstanding warrant, he had authority to arrest Hurst and search the car incident to his arrest. *See State v. Stroud*, 106 Wn.2d 144, 152, 720 P.2d 436 (1986) (police permitted to search the passenger compartment of a vehicle for weapons or destructible evidence incident to arrest of one of the occupants).

■ In applying the pretext rule under the Fourth Amendment, courts use either an objective or subjective test in determining the reasonableness of an officer's conduct. *See Chapin*, 75 Wn. App. at 466. This court recently adopted the objective test in analyzing the pretext rule under the Fourth Amendment. 75 Wn. App. at 468. Under this test, a stop is reasonable and, therefore, constitutional "if a reasonable officer would have made the stop in the absence of an improper purpose. Under this approach, the proper focus is not the arresting officer's subjective motivation, but rather, the objective reasonableness of his or her conduct". (Footnote omitted.) 75 Wn. App. at 468.

Blumenthal argues that the objective approach should be adopted in applying the pretext rule under the state constitution as well. We agree because we do not discern any reason why this rule should be interpreted differently under article I, section 7 than under the Fourth Amendment.[3] But we do not agree with Blumenthal that the stop here was objectively unreasonable.

■ Although Nunnelee testified throughout the suppression hearing that he decided to follow and stop the car in large part because he thought its occupants may have been involved in car prowling, his subjective motive for the stop is irrelevant to whether it was objectively reasonable.[4] Rather, the reasonableness of an officer's actions is gauged "by the circumstances surrounding the stop, including whether the officer was following standard

[3]Blumenthal has not assigned error to the Superior Court's holding that the stop was "otherwise objectively reasonable". Thus, although he argues that this court should apply an objective test under the state constitution, he fails to establish that the Superior Court erred in concluding that the initial stop of the car was objectively reasonable.

[4]The fault with Blumenthal's analysis is that he relies primarily on subjective factors which, as discussed above, are irrelevant to an objective inquiry. For example, he argues that Nunnelee followed the car because he suspected the occupants of the car were involved in car prowls, asked for identification because of his suspicions about car prowls and searched the car primarily to see if it contained tools consistent with car prowls. These factors, however, all pertain to Nunnelee's subjective motivation in stopping the car, and not to the objective reasonableness of his conduct.

procedures or routine practices in effecting a stop". *Chapin*, 75 Wn. App. at 468.[5] Nunnelee was in the parking lot as part of his routine patrol duties, which included looking for criminal activity. Presumably, those duties also include enforcing traffic regulations. There is nothing in the record to indicate that he departed from normal practices or procedures in making this stop. For example, he did not follow the car for an unreasonably long period of time, nor was he assigned to duties in which making a traffic stop would be unusual. There is no indication that a reasonable officer would not have made the stop in these circumstances. The stop was objectively reasonable and, therefore, constitutional.

The conviction is affirmed.

Cox, J., and ALSDORF, J. Pro Tem., concur.

---

[5]*See Chapin*, 75 Wn. App. at 468 ("adherence to normal practices and procedures is significant in that an improper or pretextual motive may be inferred where there is a discernable departure from them").