**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| THE STATE OF WASHINGTON,<br><br>          Respondent,<br><br>     v.<br><br>CALEB DANE BELL,<br><br>          Appellant. | No. 86018-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Caleb Bell appeals his conviction for residential burglary and theft arguing that the trial court violated the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington State Constitution by admitting evidence gained from an unconstitutional arrest that lacked probable cause. We affirm.

I

On November 25, 2021, video surveillance showed a man enter Helena Matheson's home and then leave in her Mazda that was parked in the driveway. Matheson was out of town on vacation at the time. When Matheson returned, she discovered her Mazda and the keys were missing along with a check issued to one of the other house occupants. A bulletin was distributed to King County Sheriff's Office (KCSO) detectives that showed screenshots of the incident.

On November 30, 2021, Seattle Police Officer Yang Xu was dispatched to a residence in Northeast Seattle in response to a report of a residential burglary. Xu spoke with a contractor working at the residence who reported that his tools and a friend's car key were missing from the home along with his friend's car, a 2015 Audi A6, that had been parked outside the property. Xu reported a missing 2015 black Audi A6 with a California license plate.

On December 4, 2021, Deputy Jeff Durrant and Deputy Daniel Koontz were at lunch when they observed an individual, later identified as Bell, seated in the driver's seat of a black Audi A6 with California license plates. Durrant and Koontz observed Bell getting in and out of the vehicle with various items. Officers ran the license plate number and learned the vehicle was reported stolen.

Officers followed Bell into a nearby pawn shop to make contact. They placed their hands onto Bell's shoulder and mentioned wanting to talk to him about the car outside. Bell responded that the officers had not seen him in any cars. Deputy Durrant placed Bell in handcuffs.

Once at the patrol car, Deputy Koontz searched Bell incident to his arrest. Bell protested his arrest and made statements including threats to kill the deputies during the search. While searching Bell's wallet, Deputy Durrant found the missing check from Matheson's home. After the arrest, Deputy Durrant recalled the police bulletin from the burglary at Matheson's home and determined that Bell closely resembled the individual in those images.

The State charged Bell with one count of residential burglary and one count of theft of a motor vehicle.

-2-

Bell moved pretrial to suppress all physical evidence seized under CrR 3.6. Bell argued the evidence was the result of an unlawful arrest because the officers did not have probable cause. The trial court entered findings and conclusions after a CrR 3.6 hearing. The trial court relied on State v. Mance, 82 Wn. App. 539, 918 P.2d 527 (1996), and concluded that Deputy Durrant was entitled to rely on the report of the stolen vehicle as probable cause. The trial court concluded that before contacting Bell, Deputy Durrant was aware that the vehicle had been stolen and that Bell was inside the vehicle. Accordingly, the trial court concluded that those two facts were sufficient for a reasonable officer to suspect Bell had committed a crime. The trial court denied Bell's CrR 3.6 motion.

A jury found Bell guilty of one count of residential burglary and one count of theft of a motor vehicle.

Bell appeals.

II

Bell argues that the trial court violated the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington State Constitution by admitting evidence gained from an unconstitutional arrest that lacked probable cause. We disagree.

A

The Fourth Amendment of the United States Constitution and article I, section 7 of the Washington State Constitution prohibit unreasonable searches and seizures without a warrant, unless one of the few exceptions to the warrant requirement applies. U.S. CONST. amend IV; CONST. art I, § 7; State v. Day, 161 Wn.2d 889, 894, 168 P.3d

1265 (2007).  One such exception to the warrant requirement is a search incident to arrest.  State v. O'Neill, 148 Wn.2d 564, 583, 62 P.3d 489 (2003).  A lawful custodial arrest is a constitutionally required prerequisite to any search incident to arrest exception to the warrant requirement.  O'Neill, 148 Wn.2d at 585.  The lawfulness of an arrest depends on the existence of probable cause.  State v. Moore, 161 Wn.2d 880, 885, 169 P.3d 469 (2007).

We determine whether there was probable cause under an objective standard. State v. Gaddy, 152 Wn.2d 64, 70, 93 P.3d 872 (2004).  "Probable cause exists when the arresting officer is aware of facts or circumstances, based on reasonably trustworthy information, sufficient to cause a reasonable officer to believe a crime has been committed."  Gaddy, 152 Wn.2d at 70.  The State bears the burden to establish probable cause for an arrest.  State v. Grande, 164 Wn.2d 135, 141, 187 P.3d 248 (2008).

Lastly, the "fellow officer rule" allows a court to consider the cumulative knowledge of police officers in determining whether there was probable cause for an arrest.  State v. Ortega, 177 Wn.2d 116, 126, 297 P.3d 57 (2013).  Under this rule, the arresting officer who does not personally possess sufficient information to constitute probable cause may still make a warrantless arrest if the officer acts on the direction or communication with another officer.  State v. Maesse, 29 Wn. App. 642, 646, 629 P.2d 1349 (1981).  The fellow officer rule justifies an arrest on the basis of a police bulletin. Mance, 82 Wn. App. at 542.

B

Bell argues that it was insufficient for officers to rely on the stolen vehicle report to support probable cause for his arrest. Bell relies on State v. Gonzalez, 46 Wn. App. 388, 731 P.2d 1101 (1986). In that case, an officer was patrolling an area that had been subject to several recent burglaries. Gonzalez, 46 Wn. App. at 391. The officer observed an unfamiliar vehicle and pulled the vehicle over after noting the registration was expired. Gonzalez, 46 Wn. App. at 391. The passenger in the vehicle exited the car and kicked an unopened package addressed to someone other than the passengers onto the road. Gonzalez, 46 Wn. App. at 392. At this point, both the driver and the passenger were arrested. Gonzalez, 46 Wn. App. at 392. There was no confirmation that the package was stolen or linked to a burglarized home until after the defendant was arrested and transported to the police station. Gonzalez, 46 Wn. App. at 396. On appeal, the court concluded that the arrest was illegal because the officers did not have probable cause until after the arrest. Gonzalez, 46 Wn. App. at 396.

Bell also relies on State v. Sandholm, 96 Wn. App. 846, 980 P.2d 1292 (1999). There, officers arrested the defendant after observing him driving a vehicle that was listed as stolen in a police database. Sandholm, 96 Wn. App. at 847. At the suppression hearing, the State presented no evidence of the source of the stolen vehicle report, or the procedures for creating those reports. Sandholm, 96 Wn. App. at 847. On appeal, this court concluded that the State failed to establish the reliability of the stolen vehicle report. Because there was other evidence to establish probable cause, however, the arrest was affirmed. Sandholm, 96 Wn. App. at 848.

Both cases are distinguishable. Unlike <u>Gonzalez</u>, the fact that the vehicle was stolen and that Bell was inside the vehicle, were known to officers before the arrest. In <u>Gonzalez</u>, police relied on suspicious circumstances but were unaware the property had been stolen until after the arrest. 46 Wn. App. at 396. This was not the case here. Officers saw Bell in the vehicle with various items, ran the license plate number, determined that the vehicle was stolen, and then arrested Bell.

And unlike <u>Sandholm</u>, the State presented sufficient testimony as to the reliability of the stolen vehicle report. Officer Xu testified that he investigates a vehicle theft report almost on a daily basis. Xu explained that after a 911 report, he interviews the reporting party and then identifies the missing vehicle's type, year, model, and vehicle identification number. He also testified how the reports are created and how he ensures they are credible.

We conclude the officers had probable cause to arrest Bell and the evidence seized incident to the arrest was properly admitted.

We affirm.[1]

WE CONCUR:

_Mann, J._

_Díaz, J._

---

[1] In a statement of additional grounds (SAG), Bell asserts a violation of his right to a speedy trial but does not explain why trial was delayed or identify why any continuances were improper. Bell also does not explain how any delay prejudiced his ability to present a defense. We will not consider a SAG if it does not adequately inform the court of the nature and occurrence of the alleged errors. RAP 10.10(c).